## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| RICARDO SAN MIGUEL CAMPOS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:11-CV-761-Y |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United

States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Ricardo San Miguel Campos, TDCJ-ID #1504681, is a state prisoner in custody

of the Texas Department of Criminal Justice, Correctional Institutions Division.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice,

Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

In 2007 petitioner was charged by indictment with one count of aggravated sexual assault and two counts of indecency with a child in Tarrant County, Texas. (02State Habeas R. at 71)[1] The indictment also included a repeat-offender notice. (*Id.*) The state waived one of the indecency counts, and the case proceeded to trial. On May 7, 2008, a jury found petitioner not guilty of aggravated sexual assault but guilty of indecency with a child. (*Id.* at 73) Petitioner pleaded true to the repeat-offender notice, and the jury assessed his punishment at fifty years' confinement and a $10,000 fine. (*Id.* at 73) Petitioner appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. (*Id.* at 76-84) *Reyes v. State*, PDR No. 917-09. Petitioner also filed two relevant state applications for writ of habeas corpus challenging his conviction, the first of which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court, and the second was denied without written order. (02State Habeas R. at cover; 03State Habeas R. at cover) This federal petition for writ of habeas corpus followed.

At trial, H.L., who was five years old at the time, testified that on one occasion when she spent the weekend with petitioner, her step-grandfather, in July 2007, he touched the inside of her private part with his finger and it hurt. She told him to stop, but he kept on doing it. He told her it was a secret. H.L. made an outcry to her mother and her mother's boyfriend when she returned home. A sexual assault examination revealed no findings of sexual abuse. (RR, vol. 3, at 22-25, 78-

---

[1] "02State Habeas R." refers to the state court record in petitioner's state habeas application no. WR-75,554-02; "032State Habeas R." refers to the state court record in petitioner's state habeas application no. WR-75,554-03.

81, 99-101, 110)  Petitioner told Child Protective Services (CPS) investigator Jennifer Porter that

H.L. had exposed her genitals to him, that he touched H.L. under her clothes on the "clit" with his

finger, that he moved his finger in a rubbing manner up and down, that he told H.L. that she was a

nasty girl, that H.L. liked it, and that H.L. wanted him to do it again but he refused.  (*Id.* at 138-41)

### D. Issues

Petitioner raises five grounds for habeas relief, in which he complains of ineffective

assistance of trial counsel (grounds one and three), prosecutorial misconduct (ground two),

incompetence of the child victim to testify (ground four), and violation of his right to due process

(ground five).  (Pet. 7-8 & Attach. at 2-7)

### E. Rule 5 Statement

Respondent does not believe the claims presented are unexhausted, barred by limitations, or

successive.  (Resp't Ans. at 5)

### F. Discussion

#### 1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a state court shall not be granted with respect to any claim that was adjudicated

on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to

clearly established federal law if the state court arrives at a conclusion opposite to that reached by

the Supreme Court of the United States on a question of law or if the state court decides a case

differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. *Ineffective Assistance of Counsel*

Petitioner claims he received ineffective assistance of counsel at trial and on appeal. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell

4

below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Petitioner was represented at trial by Terry Barlow and on appeal by Kenneth Mullen. The state habeas court conducted a hearing by affidavit and entered findings of fact, which were adopted by the Texas Court of Criminal Appeals, refuting petitioner's ineffective-assistance claims. (02State Habeas R. at 33-40, 58-59, 65-68) Applying the *Strickland* attorney-performance standard to its factual findings, the state habeas court concluded petitioner had failed to demonstrate that counsel's representation was deficient or that but for counsel's alleged acts of misconduct, the result of his trial or appeal would have been different. (*Id.* at 59-60) Petitioner has failed to rebut the findings of fact by clear and convincing evidence, therefore the court defers to those findings.

Petitioner claims trial counsel was ineffective by (1) coercing him into not testifying on his own behalf at trial, (2) failing to elicit testimony from witnesses regarding his "diminished mental capacities," (3) failing to challenge the report of the state's psychologist regarding his "mental

capacities," (4) failing to call an expert witness, (5) advising him that if he is truly innocent he should

not take the 25-year plea offer by the state, (6) failing to challenge the sufficiency of the evidence,

and (7) failing to bring forth testimony as promised. (Pet. at 7 & Attach. at 4-5)   Trial counsel

responded to these allegations as follows:

> In his Application for Writ of Habeas Corpus, Mr. Campos complains that "counsel advised defendant not to talk," that his "lawyer denied me a chance to testify," and that "My attorney Mr. Terry J. Barlow instructed me not to testify."

> In response to these complaints I would refer the Honorable Court to the Reporter's Record, Volume 3, pages 151 to 153. Following the presentation of the State's case, I called Mr. Campos to testify outside the presence of the jury to discuss this very issue. During that proceeding I told Mr. Campos that "you can testify if you wish[.]" I followed this statement with my advice to Mr. Campos that I believed it was in his best interest not to testify, for two reasons: first, because Mr. Campos was charged as a habitual offender, and although up to that point no mention had been made of this, if he did testify then the State would likely be allowed to cross examine him with his prior convictions; and secondly, that "I've also told you it's your decision. You don't have to take my advice if you don't want to. If you chose to testify, we would do the best we could." Mr. Campos subsequently decided not to testify.

> This was not the first time Mr. Campos and I had discussed his prior convictions and their impact on his decision as to whether to testify or not. I had spoken to Mr. Campos on at least two prior occasions during jail visits and had gone over his right to testify and had stressed that it was his decision. I had also advised him that regardless of whether his prior convictions would be admissible during the guilt/innocence stage of the trial, that they would be admissible in the punishment phase.

> The other important issue with Mr. Campos testifying was that during our visits prior to trial Mr. Campos alternated his defenses, first stating that he had not touched the alleged victim's vaginal area at all, then stating that he had touched her vaginal area but that it was only to instruct her as to how someone was not supposed to touch her. In other words, he admitted touching her vagina but it was for an instructional, non-sexual purpose. Mr. Campos flip-flopped between these two versions to the extent that I could not be sure which version would come out if he did testify, and I was also concerned that both versions might come out on cross-examination and so create a field day for the prosecution, not to mention the additional material they would have with regard to his prior convictions. I went

6

through a brief cross-examination role-play during one of our jail visits where I gave him some sample cross-examination questions, and Mr. Campos did not handle them very well.

Still another factor was Mr. Campos education level and his verbal skills. Although I never believed Mr. Campos to be incompetent or mentally retarded, I had him examined in an abundance of caution. A psychologist found him to be competent and did not find him to be mentally retarded, but did find him to be poorly educated and did find him to be functioning at a relatively low mental level. That, coupled with my conversations with Mr. Campos and the other factors listed previously, led me to believe he would make a poor witness.

In Mr. Campos' "Petitioner's Summplment to Writ of Habeas Corpus" (sic), he also complains that he had refused the State's plea bargain offer of 25 years at trial counsel's advice and urging. In fact, my advice to him was quite the opposite – I had urged Mr. Campos on many occasions to seriously consider the offer and had recommended that he take it, but he refused. This is reflected in the Reporter's Record, Volume 3, page 7, where I asked Mr. Campos if I had informed him of all the State's plea-bargain offers and also whether he had rejected them all because he was not guilty and wanted his day in court, to which he responded "Yes sir, I sure did."

In addition to the consideration of the above issues, representation of Mr. Campos included the following: review of the clerk's file; review of all the evidence pertinent to the case pursuant to the Tarrant County District Attorney's Office open file policy; meeting with Mr. Campos on at least three occasions at the jail to discuss his case and to make trial preparations; conversations with Mr. Campos in the holdover when he was brought to court hearings; meeting with his family on at least two occasions to discuss the case and to prepare for trial and a possible punishment hearing; filing a Competency Motion; filing and litigating a Motion to Suppress; making full and complete opening and closing statements at trial; vigorous cross examination of the State's witnesses, the rulings on two of which were included as Points of Error in the appeal filed by Mr. Campos. It is worth noting that although Mr. Campos was convicted of the offense of Indecency with a Child, he was found Not Guilty of the offense of Aggravated Sexual Assault of a Child.

(02State Habeas R. at 38-40)

Consistent with counsel's affidavit and the reporter's record, the state habeas court entered

the following relevant findings of fact on the issue:

2.      After the State presented its case, Mr. Barlow called the applicant to the stand outside of the presence of the jury.

3.      While the applicant was on the stand, Mr. Barlow told the applicant th[at] he had the right to testify, but that Mr. Barlow did not believe that testifying was in the applicant's best interest because the applicant had been charged as a habitual offender and because Mr. Barlow thought that that [sic] applicant would be a poor witness.

4.      Mr. Barlow stated that the State did not mention the applicant's prior convictions [in] it[']s case in chief, but told the applicant that if the applicant testified, the State would likely mention those convictions during cross-examination.

5.      Mr. Barlow also told the applicant that the applicant did not have to take Mr. Barlow's advice and that it was up to the applicant to decide whether or not to testify.

6.      On two prior occasions during jail visits, Mr. Barlow informed the applicant about the possible impact of the applicant's prior convictions.

(02State Habeas R. at 58) (citations to the record omitted)

Based on its findings, and applying the *Strickland* standard, the state habeas court concluded petitioner had not shown that counsel failed to function as counsel guaranteed by the Sixth Amendment or that but for counsel's alleged error, the outcome of his trial would have been different. The court further concluded that petitioner had received effective representation. (02State Habeas R. at 59-60) The court made no express findings and conclusions as to the remainder of petitioner's claims against trial counsel. Under these circumstances, a court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson*, 132 F.3d

162, 183 (5th Cir. 1997).  Applying these principles and having independently reviewed petitioner's claims in conjunction with the state court records, it does not appear that the state court's application of *Strickland*'s attorney-performance standard was objectively unreasonable.

At counsel's request, petitioner was evaluated by a psychologist, who found petitioner mentally competent, although poorly educated and "functioning at a relatively low mental level." (02State Habeas R. at 39)  Petitioner presented no evidence in state court showing he was mentally incompetent to stand trial or assist his attorney in his defense.  Thus, the decision by trial counsel not to further investigate petitioner's mental condition or call an expert witness on the matter was wholly reasonable.

Further, the state habeas judge, who also presided over the trial, clearly found counsel's affidavit credible on petitioner's claim that counsel coerced him into rejecting a 25-year plea offer.  Such credibility determinations are entitled to deference, absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).

The record also refutes petitioner's allegation that counsel failed to challenge the sufficiency of the evidence at trial.  Counsel moved for a directed verdict at the close of the state's case-in-chief, which was denied.  (RR, vol. 3, at 151)  Thus, petitioner is incorrect in his assertion that trial counsel did not challenge the sufficiency of the evidence.

Finally, complaints based upon uncalled witnesses are not favored in federal habeas review because "speculations as to what these witnesses would have testified is too uncertain." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  Therefore, to show the prejudice required to support an ineffective assistance claim premised

on the failure to call a witness, a petitioner must show that the witness was available and would in fact have testified at trial in a manner beneficial to the defense. *Evans*, 285 F.2d at 377. In the state habeas proceeding, petitioner did not submit any affidavits by uncalled witnesses themselves, or offer any evidence that they would have been willing to testify on his behalf and that their testimony would have been favorable. Petitioner's bald allegation that "trial counsel failed to bring forth testimony as promised – testimony that could have been offered through testifying witnesses not just the applicant himself," without more, does not overcome the strong presumption that his counsel's actions were reasonable. *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001).

Petitioner claims appellate counsel was ineffective by designating his conviction in "Defendant's Motion for New Trial in Arrest of Judgment" as a conviction for aggravated sexual assault, instead of indecency with a child. (Pet. at 7 & Attach. at 2) Counsel responded to this allegation, in relevant part, as follows:

> In the Habeas corpus ground challenging my representation, the Applicant asserts that because I referred to his conviction as being for Aggravated Sexual Assault, rather than for Indecency with a Child, in the Motion for New Trial that I filed on his behalf, that this mislead [sic] the Court resulting in the denial of the Motion for New Trial. The Motion for New Trial had a deadline due date which was swiftly approaching when I was appointed as counsel. At the time that I was appointed neither the Clerk's Record nor the Court Reporter's Record for appeal had been filed. Upon appointment I learned from the Court Clerk that the Applicant had been Indicted for Aggravated Sexual Assault and had been sentenced[.] I put this in the motion for new trial. The Clerk did not inform me that although Indicted for Aggravated Sexual Assault that the Applicant had actually been convicted of Indecency with a Child. The trial court Judge knew the history of the case and its facts and that the Applicant wanted a new trial. The Judge was not mislead [sic] by the misnomer of offense and in any event elected not to convene a hearing on the Motion for New Trial and allowed the motion for new trial to be overruled by operation of law by inaction on the motion. Once the District Clerk and the Court's Court Reporter that took the trial filed their respective portions of the appellate record the prior misnomer in the Motion for New Trial was corrected in the appellate Brief that was filed in the Court of Appeals so that no one was mislead [sic] by the

misnomer of the offense of conviction that had been stated in the Motion for New Trial. A copy of the Brief was also forwarded to the District Court Judge.

(02State Habeas R. at 35)

The state habeas court entered findings of fact consistent with counsel's affidavit and the trial court records and concluded petitioner had not shown that counsel failed to function as counsel guaranteed by the Sixth Amendment or that but for counsel's alleged error, the outcome of the proceedings would have been different. The court further concluded that petitioner received effective assistance of appellate counsel. (*Id.* at 58-60) The state court's decision was reasonable given the evidence presented in state court. Even if petitioner could show deficient performance, which he has not, he cannot demonstrate prejudice of any sort.

### 3. Prosecutorial Misconduct

Petitioner claims the state engaged in prosecutorial misconduct during closing arguments by "leading jurors toward [his] past accusations," raising the question of petitioner's motive without proving what the motive was, using "aspersions, harsh remarks, and sharp manners of speech" clearly designed to impugn his character and prejudice the jury against him, such as telling the jurors that petitioner is a child molester and a sex offender who believes in his own mind that kids love sex, accusing petitioner of "masturbating a child," speculating that petitioner saw his granddaughter as a sexual object, pointing out that petitioner used the word "clit" to refer to the child's vagina, and arguing that "that's the part of the sexual organ he wanted a piece of." (Pet. at 7 & Attach. at 2-4; RR, vol. 3, at 157, 171-72)

Relying solely on state case law, the first complaint regarding petitioner's past crimes was addressed by the appellate court as follows:

The prosecutor made the following comment during closing argument:

> [Prosecutor]:  When does it end?  When do we say, you know what, maybe there's been other things along the way we missed too, but now we know what your intent is.

> [Defense Attorney]:  We'd ask the jury to be instructed to disregard the statement of the prosecutor.

> The Court:  You'll disregard that statement made by the prosecutor.

> [Defense Attorney]:  We would ask the court – my duty requires to ask the Court for a mistrial.

> The Court:  That's denied.

Campos argues that the prosecutor's comment improperly asked the jury to consider his prior crimes in arriving at its verdict. He claims that the harm from this improper argument could not be cured by a jury instruction to disregard the comment and that, consequently, the trial court abused its discretion by denying his motion for mistrial.

To be permissible, the State's jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial.  Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, i.e., "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required.

In determining whether the trial court abused its discretion by denying the mistrial, we balance three factors:  (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the strength of the State's case against Campos.

Looking at the first factor – the severity of the misconduct – evidence at trial showed that two years prior to Campos's incident with the complainant, the complainant's older brother also had complained that Campos had touched him in an inappropriate manner. Thus, the prosecutor could have been referring to this when she made the complained-of comment.  The comment does not directly impinge

Campos's failure to testify and is not inflammatory in nature. Regarding the second factor – the curative measures taken – the trial court cured any prejudice from the prosecutor's comment by immediately instructing the jury to disregard it, and we presume that the jury complied with the instruction. Concerning the third factor – the strength of the State's case – the complainant testified that Campos touched her private area, and the complainant's mother, the mother's fiancé, and a nurse practitioner who examined the complainant corroborated her testimony. A CPS investigator also testified that Campos confessed to her that he had inappropriately touched the complainant. The jury acquitted Campos of sexual assault and convicted him of the less serious offense of indecency with a child. Given the mildness of the prosecutor's remark during closing argument and the strength of the State's case against Campos, any error was harmless.

Thus, weighing the appropriate factors, we hold that the trial court did not abuse its discretion by denying Campos's motion for mistrial.

(02State Habeas R. at 81-84) (citations omitted)

Federal habeas relief does not lie on the basis of an improper jury argument unless the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). A petitioner demonstrates the existence of unfairness that warrants federal habeas relief by showing that a reasonable probability exists that he would not have been convicted absent the comments. *Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002); *Barrientes v. Johnson*, 221 F.23d 741, 753 (5th Cir. 2000); *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). Factors that are important in the court's analysis include, among other things, whether curative instructions were issued and the weight of evidence against petitioner. *Darden*, 477 U.S. at 181-82. For the reasons given by the state court, the prosecutor's remarks, even if improper, were not sufficiently prejudicial to warrant habeas relief, especially in light of the trial court's curative instruction, which minimized any harmful effect, and the evidence of defendant's guilt. *United States v. Rodriguez,*

43 F.3d 117, 124 (5th Cir. 1995) (improper jury argument rendered harmless by instruction to disregard).

### 4. *Competence of the Child Victim*

Petitioner claims that H.L. was not a competent witness at trial because her testimony was inconsistent, contradictory and questionable at best and because H.L. admitted that she did not tell the truth sometimes. (Pet. at 8 & Attach. at 6-7)  The state habeas court, noting that the trier of fact is the sole judge of the weight and credibility of the evidence and that the jury found H.L.'s testimony credible, nevertheless concluded that petitioner's claim was not presented on the proper form and is an argument regarding sufficiency of the evidence, which is not cognizable in a writ of habeas corpus under state law. (02State Habeas R. at 67)  As such, respondent asserts petitioner has procedurally defaulted the claim by not raising the claim on appeal. (Resp't Ans. 5-7)

Texas state procedural rules require insufficiency claims to be raised on direct appeal, and such claims may not be brought in a state application for writ of habeas corpus. *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994); *Clark v. Texas,* 788 F.2d 309, 310 (5th Cir. 1986).  The Texas Court of Criminal Appeals has confirmed that when a state habeas applicant challenges the sufficiency of the evidence in a state habeas application, and it subsequently disposes of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable. *See Ex parte Grigsby,* 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).  In these circumstances, reliance on the procedural default by the state court is established and presents an adequate state procedural ground barring federal habeas review. *Ylst v. Nunnemaker,* 501 U.S. 797, 801-07 (1991).  Accordingly, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated by petitioner, this claim is procedurally barred from this

court's review.  *Martinez v. Ryan*, — U.S. —, — S. Ct. —, 2012 WL 912950, at *6 (Mar. 20, 2012).

### 6. Due Process Violation

Petitioner claims his due process rights were violated when he made incriminating statements to Jennifer Porter, the CPS investigator, who was acting in her official capacity at the time, without the benefit of the *Miranda* warnings.  (Pet. Attach. at 8)  Under Texas law, only when a CPS investigator is acting in tandem with police to investigate and gather evidence for a criminal prosecution are *Miranda* warnings required.  (02State Habeas R. at 67)  *Wilkerson v. State*, 173 S.W.3d 521, 523 (Tex. Crim. App. 2005).  The state habeas court found that petitioner had not alleged or provided any evidence that Porter was working in tandem with the police when he made his statements to her; thus, his statements were admissible.  (02State Habeas R. at 65)

Petitioner has not shown that the state's court's determination of the issue is contrary to federal law on the issue or unreasonable given the evidence presented in state court.  Mere conclusory allegations do not raise a constitutional issue in a habeas proceedings.  *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).  Furthermore, "*Miranda* warnings must be administered prior to 'custodial interrogation.'"  *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)).  "A suspect is . . . 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."  *Id.* at 596.  "Two discrete inquires are essential to the determination:  first, what were the circumstances surrounding the interrogation; and second, given

those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *J.D.B. v. N. Carolina*, —— U.S. ——, 131 S. Ct. 2394, 2402 (2011).

Porter testified that as part of her continuing investigation she went to petitioner's home in an attempt to speak with Ms. Campos, petitioner's wife, to determine if petitioner had contact with other children, not to interrogate petitioner. She also testified that petitioner invited her into his home and volunteered the statements. (RR, vol. 3, at 122-29) Under these circumstances, petitioner cannot demonstrate custodial interrogation for purposes of *Miranda*.

## II. RECOMMENDATION

Petitioner has not demonstrated that he is entitled to federal habeas relief; thus, it is recommended that the petition be denied.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until April 30, 2012. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved

party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until April 30, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April _____9_____, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE